[Crim. No. 376.   Third Appellate District.—May 10, 1917.]

THE PEOPLE, Respondent, v. FLORI GRANDI, Appellant.

CRIMINAL LAW—ASSAULT WITH DEADLY WEAPON WITH INTENT TO MURDER—EVIDENCE — INSUFFICIENTLY IDENTIFIED WEAPON — LACK OF PREJUDICE.—In a prosecution for the crime of assault with a deadly weapon with intent to commit murder, the defendant is not prejudiced by the admission in evidence of the pistol with which the prosecution claimed the assault was committed, even though the same was not sufficiently identified as the one which the defendant used, where it was admitted that he had a pistol at the time of the assault and that he discharged it.

ID.—DEADLY CHARACTER OF WEAPON—SUFFICIENCY OF EVIDENCE.—In such a prosecution the deadly character of the weapon used is sufficiently proven by evidence of its discharge which was accompanied with a hissing sound.

ID.—EVIDENCE—INTEREST OF WITNESS—PROCURING OF WRITTEN STATEMENT OF BAD REPUTATION OF ANOTHER WITNESS—ADMISSIBILITY.— In such a prosecution it is proper for the district attorney, for the purpose of showing that a witness for the defense had taken an unusual interest in the case in favor of the accused, to question the witness concerning the securing by him of a written statement of residents of the community declaring that the reputation of a witness for the state for truth was bad, but such statement is not admissible in evidence on motion of the defendant.

ID.—PRESUMPTION OF GOOD CHARACTER OF DEFENDANT—INSTRUCTION.— The refusal to instruct the jury to the effect that a person accused of crime is presumed to have a good character until the contrary is established by competent evidence, and that it is the duty of the

jury to give the defendant the benefit of such presumption, is not prejudicial, where the character of the accused for the traits involved in the charge upon which he was tried was not directly made an issue by the introduction of proof addressed thereto, and the jury was instructed that the defendant was to be presumed to be innocent until his guilt was confirmed by the evidence beyond all reasonable doubt.

APPEAL from a judgment of the Superior Court of Plumas County. J. O. Moncur, Judge.

The facts are stated in the opinion of the court.

H. B. Wolfe, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

HART, J.—The defendant was charged by information, filed in the superior court of Plumas County, with the crime of assault with a deadly weapon with intent to commit murder, and was convicted of assault with a deadly weapon. He appeals from the judgment.

The assault occurred on the twentieth day of July, 1916, between the hours of 4 and 5 o'clock P. M., in Clover Valley, a short distance from the town of Beckwith, in Plumas County. The party assaulted was one William Tognola. Both men are Italians, and were employed at a dairy owned by one Samuel Bonta. The prosecuting witness, Tognola, on the day before that upon which the assault was committed, mounted a horse for the purpose, as he stated, of going out into a field belonging to Bonta and driving therefrom some calves. Upon his return to the cabin, in which he and the defendant had been living, and which was situated near the dairy, the accused, with a large stick or club in his hand, approached Tognola and, addressing him, said: "You must be killed," or, "You will be killed." Becoming frightened at this demonstration upon the part of the defendant, Tognola dismounted from the horse and ran some distance away from the premises. On the following day, at the hour above named, while Tognola was engaged in milking, the defendant again approached him, this time with a pistol, and as Tognola, who saw him approaching with the weapon, started to run from him, fired two shots at the latter, neither of which struck

Tognola. This statement of the circumstances under which the assault was committed is taken from Tognola's testimony, which was corroborated by the testimony of one Paul Patonti, another employee of Bonta, and the only other person present at the time of the assault.

The motive for the assault is not clearly shown by the testimony, although Tognola testified that the defendant appeared to have become very angry with him on the day before because he (Tognola) had used the horse, which was the property of Bonta, for the above-stated purpose.

Tognola testified that he owned the weapon used by the defendant in making the assault; that he (Tognola) had left the pistol on a table in the cabin, and that the defendant had evidently gone into the cabin and taken it with him, perhaps for the special purpose of assaulting Tognola. The latter further testified that he heard the hissing noise of the bullets as they passed near him, and also said that, after the shooting, he slipped into the cabin through a window, procured some blankets and went out into the field, where he slept that night. The defendant, during the night, left the premises, and was later placed under arrest.

The defendant admitted on the witness-stand that he fired two shots from a "gun" at the time of the alleged assault, but positively declared that he did not shoot at Tognola.

The complaint on this appeal is of alleged errors in the action of the court disallowing certain testimony and declining to allow and read to the jury certain instructions requested by the defendant. Of these asserted errors, the first to which attention is directed is in the ruling whereby the pistol with which the prosecution claimed the defendant committed the assault was admitted in evidence. The ground of the objection was that the weapon was not sufficiently identified as the weapon used by the accused on the occasion of the shooting. But, assuming that the weapon was not sufficiently identified as the one with which the defendant did the shooting, the action of the court in admitting it in evidence was clearly without prejudice, since the defendant himself admitted that he had a pistol at the time of the assault and that he discharged it. In view of that admission, and of the fact that Tognola testified that the defendant fired the weapon at him, it obviously became a matter of little or no consequence whether the weapon actually used on the occasion of

the shooting was identified at the trial and introduced in evidence or not. The only purpose which could be subserved by proof, and the identification of the weapon, would be to corroborate the testimony of the witnesses that one was in the possession of the defendant at the time of the alleged assault, and that he used it as described by the witnesses for the people; and the admission by the accused that he did have such a weapon at the time referred to and discharged it, supplied every evidentiary purpose which the production of the weapon itself could possibly have accomplished. It follows that even the introduction in evidence of a pistol which was not used by the defendant on the occasion of the assault could not in any degree have affected the verdict.

It is next contended that there was entirely a failure to prove that the pistol by means of which the alleged assault was made was a deadly weapon. Confessedly, it is essential for the people, in a case where, as here, the claim is that the assault charged was committed by shooting a pistol or gun at the prosecuting witness, to show that the pistol or gun used as the means for committing the assault was loaded with powder and ball, or, in other words, that it was when so used a weapon which when employed as a means of assaulting another, is "likely to produce great bodily injury," and we think that there is evidence produced by the prosecution which tended sufficiently to prove that fact. The prosecuting witness and the witness, Patonti, as well as the defendant himself, testified that the weapon was fired or discharged, and Tognola declared that he heard the hissing sound which always accompanies a bullet as it whizzes through and against the air currents. These constituted circumstances from which the inference would naturally follow that the pistol was loaded.

There was no error in the action of the court in refusing to allow in evidence, on the motion of the defendant, a certain written statement, to which a number of the residents of the vicinity of Beckwith had subscribed, and in which it was declared that the reputation of Paul Patonti, a witness for the people, for truth, honesty, and integrity in the community in which he lived was bad. The offer of the statement was made during the examination of the witness, Rudolph Righetti, who testified for the defense. It appears that, after the defendant was charged with assaulting Tognola, and after it was known that Patonti would give testimony at

the trial against the defendant, Righetti, an intimate friend of the latter, prepared the statement referred to, and went about for the purpose of securing signatures thereto, and succeeded in inducing a number of persons to sign it. These facts were brought to light through the cross-examination by the district attorney of Righetti, and the statement was called for by that officer and produced by the witness, but it was not read to the jury by the district attorney. The object of the cross-examination, so far as it was based upon said written statement, was merely to show the interest of Righetti in the case and in behalf of his friend, the defendant. The statement, if received in evidence, would have shown, as before stated, that certain persons regarded the reputation of Patonti for truth, honesty, and integrity as bad, and, under the circumstances under which it was offered as proof, it would, if admitted, have been hearsay, pure and simple. The statement was undoubtedly offered upon the theory that it was allowable under the terms of section 1854 of the Code of Civil Procedure, but, as stated, while the district attorney called for and was given and examined the statement, he read no part of it to the jury, but only referred to it to show that Righetti had taken unusual interest in the case in favor of the accused.

The next assignment involves the action of the court in disallowing the following instruction, requested by the defendant: "You are instructed that you must find that defendant was armed with a loaded pistol, and by that is meant a pistol loaded in such manner that the discharge of it would produce death or great bodily injury upon William Tognola, and unless you find the pistol was so loaded you must find defendant not guilty."

The court defined a deadly weapon within the meaning of section 245 of the Penal Code, and then covered and clearly explained to the jury the proposition contained in the above-quoted instruction as follows: "You are instructed that in this case, defendant, Flori Grandi, is charged with the crime of assault with a deadly weapon with intent to commit murder, and you are instructed that before you can find defendant guilty of the crime as charged, you must be satisfied to a moral certainty and beyond all reasonable doubt that defendant, Grandi, was armed, with a pistol so loaded that it would inflict serious bodily injury or death upon William Tognola

under the circumstances as shown by the evidence in this case."

Thus, it will be observed, the proposition enunciated in the rejected instruction was clearly covered by the court's charge.

It is further objected that error was committed in the rejection of the following instruction, proposed by the defendant: "You are instructed that a person accused of a criminal offense is presumed to have a good character for the traits involved in this action for peace and quiet until the contrary is established by competent evidence, and you are further instructed that it is the duty of each and every of you as jurors to give the defendant the benefit of this presumption."

Generally, so far as the writer has observed, such an instruction is never proposed or given where the character of the accused for the traits involved in the charge upon which he is tried is not directly made an issue by the introduction of proof addressed thereto. It cannot be doubted, however, that the instruction correctly states the rule, and it would have been just as well to have given it, since the defendant requested that it be submitted to the jury; but it cannot be assumed, from the fact that the instruction or one bearing upon the subject to which it related was not given, that the jury considered the case upon the hypothesis that the defendant was not a man of good character for peace and quiet. It is, on the contrary, to be assumed, in view of the fact that the defendant's character was not directly assailed by the people, and that it was not made a direct issue by himself—that is, that there was no evidence whatever presented as to his character—that the jury considered the case as it was directly and actually made by the proofs, and upon the case as so made arrived at their verdict. But, at all events, under the circumstances, it seems to us that what is said in the rejected instruction was substantially and sufficiently declared in the instruction, which was given, that the defendant was to be presumed to be innocent until his guilt was confirmed by the evidence beyond all reasonable doubt.

We have now considered all the points urged for a reversal, and, having fully examined and considered the whole record, have found no legal reason for setting at naught the result arrived at below.

The judgment is accordingly affirmed.

Chipman, P. J., and Burnett, J., concurred.